**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Ann James,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-01183-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Sally Ann James's appeal from the Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under 42 U.S.C. §§ 401–434, 1381–1383f. (Doc. 1). The appeal is fully briefed. (Docs. 20, 25, 26). The Court now rules.

**I.    BACKGROUND**

Plaintiff was 60 years old at the time of her hearing, completed high school, and has past relevant work experience as a Pharmacy Technician. (Doc. 20 at 3). Plaintiff argued that the following conditions rendered her disabled: "chronic venous insufficiency; obesity; a history of episodes of left lower extremity deep vein thrombosis and post-thrombotic syndrome of the left lower extremity requiring lifelong anticoagulation therapy, such as use of Coumadin or Xarelto; chronic venous hypertension with inflammation of the bilateral sides; varicose veins of the bilateral lower extremities, status post endovenous laser treatments; lymphedema (a type of swelling caused by a build-up of lymph fluid under the skin) (sometimes spelled lymphoedema in the claimant's medical records) in the

bilateral lower extremities; and arthritis in the right knee." (Doc. 14-3 at 18). Plaintiff has not engaged in substantial gainful activity since June 1, 2014, the alleged onset date. (*Id.*).

Plaintiff filed applications for SSDI and SSI benefits in November of 2016. (Docs. 20 at 2; 14-3 at 16). Those applications were denied at the initial stage, (Doc. 14-3 at 16), upon reconsideration, (*Id.*), and by the Administrative Law Judge ("ALJ") after a hearing, (Docs. 20 at 2; 14-3 at 16–41). The Appeals Council denied review. (Doc. 20 at 2). Plaintiff then sought review in this Court. (Doc. 1).

### a. The Disability Determination

A claimant must show she "is under a disability" to qualify for disability insurance benefits. 42 U.S.C. § 423(a)(1)(E). The claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging in any "substantial gainful activity." *Id.* § 423(d)(1)–(2). The Social Security Administration has created a five-step process for an ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1420(a)(1). Each step can be dispositive. *See id.* § 404.1420(a)(4). "The burden of proof is on the claimant at steps one through four," and the burden shifts to the Commissioner at step five. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ examines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If not, then the ALJ proceeds to step two. At step two, the ALJ considers whether the claimant has a physical or mental impairment or a combination of impairments that are "severe." *Id.* § 404.1520(a)(4)(ii). If the ALJ finds that there is severe impairment, then the ALJ proceeds to step three to determine whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* § 404.1520(a)(4). The RFC is the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ determines whether the claimant can still do

"past relevant work" in light of the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the final step and examines whether the claimant "can make an adjustment to other work" considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If an adjustment can be made, the claimant is not disabled. *Id.*

### b. The ALJ's Decision

The ALJ denied Plaintiff social security benefits because she determined that Plaintiff had "not been under a disability" since the onset date and was "capable of performing past relevant work as a Pharmacy Technician." (Doc. 14-3 at 40–41). After finding that Plaintiff was not engaged in substantial gainful activity since June 1, 2014 at step one, the ALJ determined, at step two, that Plaintiff had the following severe impairments:

> chronic venous insufficiency; obesity; a history of episodes of left lower extremity deep vein thrombosis and post-thrombotic syndrome of the left lower extremity requiring lifelong anticoagulation therapy, such as use of Coumadin or Xarelto; chronic venous hypertension with inflammation of the bilateral sides; varicose veins of the bilateral lower extremities, status post endovenous laser treatments; lymphedema . . . in the bilateral lower extremities; and arthritis in the right knee.

(*Id.* at 18).

At step three, the ALJ concluded that Plaintiff's impairments, singularly or in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 21). Accordingly, the ALJ conducted an RFC analysis and found that Plaintiff could perform "light work." (*Id.* at 22–40).

At step four, the ALJ determined that Plaintiff could perform past relevant work as a Pharmacy Technician. (*Id.* at 40). Thus, the ALJ determined that Plaintiff had not been under a disability from June 1, 2014 through the date of the ALJ's decision. (*Id.* at 41).

## II. LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the

ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

## III. ANALYSIS

Plaintiff contends that there are two potential errors in the ALJ's analysis: (1) the ALJ erred by rejecting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence, and (2) the ALJ erred by determining Plaintiff's work capacities without support based on substantial evidence in the record. (Doc. 20). The Court addresses each contention in turn.

### a. Symptom Testimony

Plaintiff argues that the ALJ erred when she evaluated Plaintiff's symptom testimony. (Doc. 20 at 11–18). The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 14-3 at 23).

#### 1. Legal Standard

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a Plaintiff's subjective symptom testimony. "First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). If the Plaintiff presents such evidence, the ALJ then evaluates the Plaintiff's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a Plaintiff produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### 2. Discussion

Plaintiff first argues that the ALJ applied an improper legal standard by requiring Plaintiff's symptoms to be "entirely consistent" with the objective medical evidence. (Doc. 20 at 13). Plaintiff further asserts that the ALJ improperly required Plaintiff to provide medical evidence of the severity of Plaintiff's symptoms. (*Id.*).

Although the Court agrees that Plaintiff is not required to provide medical evidence of the severity of her symptoms, *see Garrison*, 759 F.3d at 1014–15, objective medical evidence is a useful tool for an ALJ to assess Plaintiff's credibility regarding the intensity and persistence of her symptoms, *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding that objective medical evidence was appropriately used to assess credibility of plaintiff's symptom testimony); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (holding that medical evidence is "a relevant factor in determining the severity of the claimant's pain and its disabling effects"). The Court does not read the ALJ's "not entirely consistent" statement, (Doc. 14-3 at 23), as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence. The ALJ found this conflicting evidence to be "the objective medical evidence, [Plaintiff's] treatment history, and [Plaintiff's] reported activities and demonstrated abilities." (*Id.* at 23).

#### A. Objective Medical Evidence

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (Doc. 14-3 at 22). The ALJ went on to discuss the medical evidence she found inconsistent citing records indicating that Plaintiff regularly had clinical examinations that, outside of her BMI, blood pressure, and transitory conditions, were unremarkable or within normal limits, (Docs. 14-3 at 23–27, 29–30, 32–34; 14-8 at 18, 20, 22, 23, 44, 55, 57, 61, 64, 76–77, 79–80, 83, 86, 88–89, 91–92, 95, 111; 14-10 at 4, 12–13; 14-11 at 18, 68; 14-12 at 3, 122; 14-13 at 55, 70–72, 80–81, 83), Plaintiff regularly showed appropriate mood and affect and noted no issues with depression, (Docs. 14-3 at 23–34; 14-8 at 9, 20, 23, 51, 54,

58, 61, 64, 76–77, 79–80, 83, 86, 88–89, 91–92, 94–95, 107–108, 111, 122; 14-9 at 9, 23, 41, 48–49, 78; 14-10 at 4–5, 18, 47, 49, 70; 14-11 at 2, 5–6, 8, 16, 19, 28–29, 63, 83, 85, 112; 14-13 at 55, 80), Plaintiff repeatedly had normal neurological examinations and showed normal gait, muscle tone, strength, and range of motion, (14-3 at 24–27, 29 32–34; 14-8 at 9, 20, 23, 55, 57, 61, 64, 83, 86, 95, 108, 111; 14-9 at 9, 23, 41, 49, 78; 14-10 at 18, 45, 49, 54; 14-11 at 2, 5–7, 63, 68, 87; 14-12 at 3, 122; 14-13 at 83), Plaintiff was independently ambulatory, at least for short distances, and could cover long distances with an assistive device, (Docs. 14-3 at 24, 26, 32; 14-8 at 8; 14-9 at 40; 14-10 at 52, 82), and Plaintiff was prescribed and found improvement in her symptoms through conservative treatment, (Docs. 14-3 at 24–31, 33–34; 14-8 at 17, 19–20, 23, 63, 113–114, 118–119, 121–23; 14-9 at 12, 141; 14-10 at 17–18; 14-11 at 2, 12, 26, 83–84, 86, 105–106, 108–113; 14-13 at 79).

Plaintiff argues that the ALJ did not state which of her specific symptoms were found consistent or inconsistent with the objective medical evidence. (Doc. 20 at 12). The ALJ, however, specifically noted that Plaintiff "repeatedly demonstrated adequate strength and mobility and repeatedly presented with a normal or adequate gait overall at clinical examinations, which contradicts [Plaintiff's] allegations of regularly using an assistive device to ambulate, . . . and contradicts [Plaintiff's] allegations of being able to stand or walk for only a short period before needing to sit down." (Doc. 14-3 at 38). Further, the ALJ noted that Plaintiff testified she "finds herself sitting down with her leg(s) elevated about six to eight hours over the course of an average day," but Plaintiff's treating sources "did not document such extreme complaints made to them." (*Id.* at 39). The ALJ additionally noted that "[t]he longitudinal record shows occasional exacerbations in [Plaintiff's] leg conditions, but those exacerbations responded to treatment," and noted these records did not support Plaintiff's claims regarding the severity of her leg pain. (*Id.*). The ALJ also stated that the objective medical evidence shows that Plaintiff has relatively good use of her right knee given the lack of follow up with a surgeon, pain management specialist, or physical therapist following a Cortisone injection. (*Id.* at 39-40).

Because the ALJ discussed the medical record in detail and tied that discussion to specific testimony by Plaintiff, the Court finds the ALJ sufficiently tied her characterization of the medical record to Plaintiff's symptom testimony. *See Lewis v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00765-PHX-MTL, 2021 WL 791467, at *4 (D. Ariz. Mar. 2, 2021) (finding that ALJ, by citing specific instances throughout a multi-year period, adequately tied countervailing medical record to plaintiff's symptom testimony when discounting that testimony).

Plaintiff additionally argues that the medical record supports, rather than contradicts, her testimony. (Doc. 20 at 14–15). As discussed above, however, the ALJ cited portions of the record and discussed how they directly contradicted Plaintiff's testimony. At most the record is ambiguous as to the severity of Plaintiff's symptoms, and, "given that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court defers to the ALJ's determination that the record contradicts Plaintiff's testimony. *Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Thus, the Court does not find that the ALJ erred in discounting Plaintiff's symptom testimony after finding that it was contradicted by the medical record. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

### B. Treatment History

The ALJ found that Plaintiff's symptom testimony was not consistent with the evidence of Plaintiff's treatment history and improvement through treatment. (*Id.* at 27–28). The ALJ cited numerous examples to support her finding including Plaintiff's regular conservative treatment plans such as physical therapy, anticoagulants, weight loss, exercise, leg elevation, and use of compression stockings, (Docs. 14-3 at 24–34; 14-8 at 19, 20, 23, 62, 77, 95, 111, 113–115, 118–119, 121, 122–124; 14-9 at 141; 14-10 at 5, 18, 82; 14-11 at 3, 13, 16, 26, 30, 68, 76, 84, 86, 105–106, 108–110, 111–113; 14-13 at 79, 83,

87, 90), Plaintiff's repeated failure to follow up on and complete conservative treatment, (Docs. 14-3 at 24, 27, 31–32, 35, 49–73; 14-8 at 110, 121–122; 14-10 at 72; 14-11 at 26, 111), and the improvement in Plaintiff's symptoms and lack of side effects from treatment, (Docs. 14-3 at 24–27, 29–34; 14-7 at 9, 45, 58, 68; 14-8 at 2, 17, 19–20, 23, 63; 14-9 at 11–12, 15, 23, 141; 14-10 at 17–18, 27; 14-11 at 2, 12, 32, 83).

The ALJ also discussed areas of Plaintiff's testimony that were directly contradicted by her treatment history. For example, the ALJ noted that Plaintiff's testimony about "needing to spend so much time with her legs elevated" was contradicted by multiple treating sources who told Plaintiff to exercise regularly and released her to work. (Doc. 14-3 at 39). Further, Plaintiff even admitted that no treating source told her to sit and elevate her legs as much as she testified was necessary. (*Id.*). Plaintiff also testified that she did not regularly follow conservative treatment programs, such as wearing compression stockings and losing weight, because she lacked motivation due to depression. (*Id.* at 62–63). The ALJ found this testimony was contradicted by evidence showing Plaintiff did not tell her treating sources about her lack of motivation due to depression and Plaintiff's motivation to complete other courses of treatment. (*Id.* at 39).

Plaintiff argues that her treatment history, like the objective medical evidence, actually supports her testimony. (Doc. 20 at 14). As discussed above, however, the ALJ discussed specific portions of the record that she found to be inconsistent with Plaintiff's testimony. At most, Plaintiff's assertion shows the record is ambiguous as to whether Plaintiff's testimony is supported by her treatment record, and, "given that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court defers to the ALJ's finding. *Singh*, 2020 WL 5757620, at *3 (quoting *Tommasetti*, 533 F.3d at 1041). Because the ALJ determined that Plaintiff was prescribed conservative treatment, Plaintiff did not fully follow her treatment plans, and Plaintiff's symptoms improved through treatment, the Court finds that the ALJ did not err in discounting Plaintiff's symptom testimony on this basis. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (holding that evidence of conservative and effective treatment are sufficient to discount a

claimant's testimony regarding symptom severity) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Singh.*, 2020 WL 5757620, at *2–3 (affirming ALJ's discounting of plaintiff's testimony, in part, because plaintiff's conditions improved with treatment).

## C. Reported Activities and Demonstrated Abilities

The ALJ also found that Plaintiff's reported activities and demonstrated abilities contradicted her symptom testimony. (Doc. 14-3 at 23). The ALJ supported this finding by citing Plaintiff's reports that she was able to independently maintain her activities of daily living, (Docs. 14-3 at 26, 28–29, 31; 14-7 at 2–9, 51–58; 14-8 at 45, 58; 14-9 at 40), Plaintiff's ability to independently travel via walking and public transportation (Docs. 14-3 at 28, 31–32, 59–60; 14-7 at 5, 54; 14-10 at 52), and Plaintiff's ability to engage in activities such as cleaning, shopping, reading, handling money, and preparing food, (Docs. 14-3 at 28–29, 31, 58–60; 14-7 at 4–6, 53–55). Further, based in part upon her demonstrated abilities, one of Plaintiff's doctors encouraged Plaintiff to return to work in 2017. (Docs. 14-3 at 30; 14-11 at 84).

Plaintiff argues that, while she performs the daily activities listed, she does so only with difficulty. (Doc. 20 at 15). Yet, even if Plaintiff's daily activities suggest some difficulty functioning, they may be grounds for discrediting her testimony "'to the extent that they contradict claims of a totally debilitating impairment.'" *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)). The ALJ found that Plaintiff's activities, such as "being on her feet a lot when she was homeless, shopping, using public transportation when she lived near a bus stop, etc.," contradicted Plaintiff's alleged limitations, even if those activities were done with some difficulty. (*See* Doc. 14-3 at 39). *See Singh*, 2020 WL 5757620, at *3 (affirming ALJ's determination that daily activities refuted symptom testimony even though plaintiff experienced difficulty while engaging in activities).

Plaintiff also avers the ALJ did not specify any "contemporaneous contradictions between [Plaintiff's] symptom testimony and specific reported activities sufficient to

justify wholesale rejection of [Plaintiff's] symptom testimony." (Doc. 20 at 15). The ALJ, however, specifically found that Plaintiff's daily activities of "being on her feet a lot when she was homeless, shopping, using public transportation when she lived near a bus stop, . . . us[ing] the lymphedema machine until relatively recently, continu[ing] to take her medications, continu[ing] to perform some household activities, [and] present[ing] for the hearing]" contradicted Plaintiff's symptom testimony. (Doc. 14-3 at 39).

Plaintiff goes on to argue that the ALJ's "mere list of activities, without any information as to the demands, frequency, or duration of those activities, does not show any contradiction with [Plaintiff's] reported symptoms." (Doc. 20 at 16). Even if the evidence is not clear on how long or often Plaintiff performed her daily activities, as long as the ALJ's determination is reasonable, it is not the Court's role to second-guess it. *See Rollins*, 261 F.3d at 857 (holding that, even when record was equivocal about how long and often plaintiff engaged in daily activities, because ALJ's interpretation was reasonable the court would not second-guess it). Further, "the ALJ is not required to show that a claimant's activities are transferable to the work setting in order to discount her testimony on their account. Rather, an ALJ may consider whether a claimant engages in daily activities that are simply inconsistent with her allegations or that suggest that they are exaggerated, irrespective of whether the activities are transferable to a work setting." *Handy v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04545-PHX-JZB, 2020 WL 5699001, at *4 (D. Ariz. Sept. 24, 2020) (citing *Molina*, 674 F.3d at 1112).

Here, the ALJ provided a reasonable determination based on substantial evidence that Plaintiff's daily activities were incompatible with the severity of her alleged symptoms. Thus, the ALJ did not err in discounting Plaintiff's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Singh*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (finding ALJ did not err in discounting plaintiff's allegations of disabling symptoms and limitations because they were inconsistent with her reported activities).

### 3. Conclusion Regarding Symptom Testimony

Because the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony, including the objective medical evidence, Plaintiff's treatment history, and Plaintiff's reported activities and demonstrated abilities, the Court will not overturn the denial of disability benefits on this ground. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing.").

### b. Work Capacities

Plaintiff argues that the ALJ erred by giving "partial weight" to Dr. Shelman's medical opinion in determining Plaintiff's work capacities because Dr. Shelman's opinion did not constitute substantial evidence in the record. (Doc. 20 at 18–19). Plaintiff argues that, because Dr. Shelman is a nonexamining physician, his opinion is insufficient to support the ALJ's determination. (*Id.* at 19).

In determining whether a party is disabled, ALJs are required to consider the record medical opinions together with the other relevant evidence. 20 C.F.R. § 404.1527(b)–(c). When deciding how much weight to give a medical opinion, the ALJ considers numerous factors, including the supportability of that medical opinion. 20 C.F.R. § 404.1527(c)(3). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

"'[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.'" *Fliss v. Astrue*, 284 F. App'x 440, 442 (9th Cir. 2008) (quoting *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Here, the ALJ set out a detailed and thorough summary of the facts and evidence that she believed supported the opinion of Dr. Shelman, a nonexamining physician. (Doc. 14-3 at 23–36). The ALJ did not find that Dr. Shelman's opinion alone amounted to

substantial evidence, but that it was due partial weight in light of the supporting record evidence. (*See id.* at 36). The ALJ concluded that her determination of Plaintiff's work capacities was additionally supported by the objective medical evidence, Plaintiff's treatment history, and Plaintiff's disclosed activities and abilities as discussed *supra*. *See supra* Section III.a.2. Ultimately, the ALJ did not base her determination of Plaintiff's work capacities on Dr. Shelman's opinion alone, but on "[t]he evidence in total." (Doc. 14-3 at 40).

Plaintiff further asserts that Dr. Shelman's opinion should not have been given partial weight because it was "based on a review of an incomplete record." (Doc. 20 at 18). To begin, ALJ's are required to consider all the available medical evidence when determining if a party is disabled, including the opinions of nonexamining physicians. *See* 20 C.F.R. § 404.1527(b)–(c). While an ALJ should take into account whether a physician has reviewed a full or partial medical record when weighing medical opinions, the opinions of a physician who has only reviewed a partial record may still be considered by an ALJ. *See* 20 C.F.R. § 404.1527(c)(6). Additionally, the ALJ explained that Dr. Shelman's opinion was given partial weight because it comported with the objective medical evidence on the full record. (Doc. 14-3 at 36).

Accordingly, the ALJ did not err in giving partial weight to Dr. Shelman's opinion when determining Plaintiff's work capacities after finding that opinion was supported by the objective medical record. *See Fliss*, 284 F. App'x at 442 (holding that the ALJ did not err in relying on the opinions of nonexamining physicians because the medical evidence supported the opinions of the nonexamining physicians); *Cameron v. Astrue*, No. CV 07-8167-PCT-NVW, 2008 WL 4850023, at *7–8 (D. Ariz. Nov. 7, 2008) (holding that the ALJ did not err in relying on the opinions of nonexamining physicians over the opinions of treating physicians); *Darrington v. Astrue*, No. CV11-0953-PHX-DGC, 2012 WL 79276, at *7 (D. Ariz. Jan. 11, 2012) (holding the ALJ did not err in giving great weight to opinions of a nonexamining physician because the opinions were supported by the medical record).

The ALJ appropriately supported her determination of Plaintiff's work capacities with substantial evidence including the objective medical evidence, Plaintiff's treatment history, Plaintiff's daily activities and demonstrated abilities, and Dr. Shelman's medical opinion.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly.

Dated this 15th day of July, 2021.

*James A. Teilborg*
Senior United States District Judge